UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| BARBARA ANN BLAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-844 |
| | ) | |
| COMMISSIONER OF | ) | Honorable Janet T. Neff |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  On March 29, 2014, plaintiff filed her applications for DIB and SSI benefits.   Plaintiff alleged an October 15, 2008, onset of disability.  (ECF No. 7-6, PageID.301-15) [1].  Plaintiff's claims were denied on initial review.  (ECF No. 7-5, PageID.207-14).   She received an initial hearing before the ALJ on October 22, 2015, and a supplemental hearing on April 21, 2016.   (ECF No. 7-2, PageID.102-29; ECF No. 7-3, PageID.131-70).  On July 28, 2016, the ALJ issued his decision finding that plaintiff was not disabled.  (Op., ECF No. 7-2, PageID.44-58).

_____

[1] This was plaintiff's eighth application for DIB and/or SSI benefits.  The ALJ found that administrative *res judicata* stemming from the most recent decision barred any finding that plaintiff was disabled on or before December 10, 2010.  (Op. at 1, ECF No. 7-2, PageID.44).

On July 20, 2017, the Appeals Council denied review (ECF No. 7-2, PageID.33-36), and the ALJ's decision became the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision.  Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

I.   The ALJ's refusal to subpoena, allow cross-examination or the proffer of interrogatories to a consultative examiner was an abuse of discretion and denied plaintiff due process.

II.  The ALJ's decision on plaintiff's residual functional capacity (RFC) is not supported by substantial evidence.

    A. The ALJ failed to consider all plaintiff's well-documented impairments as required by 20 C.F.R. § 404.1520a, SSR 98-6p and SSR 85-15p.

    B. The ALJ's findings did not provide any rationale for the weight given to the medical source findings of record and did not address the basis for crediting some but not all of their opinions.

    C. The ALJ failed to properly address plaintiff's symptoms (formerly credibility) as required by 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p.

(Plf. Brief at iii, ECF No. 11, PageID.781).  For the reasons stated herein, I recommend that the Court affirm the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**The ALJ's Decision**

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2012.  (Op. at 5, ECF No. 7-2, PageID.48). Plaintiff had not engaged in substantial gainful activity on or after October 15, 2008, the alleged onset date.  (*Id.*).  Plaintiff had the following severe impairments: "osteoarthritis of the right knee; obesity; asthma; migraine headaches; major depression; borderline intellectual function; and a general anxiety disorder."  (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled a listing impairment.  (*Id.* at 6, PageID.49).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of sedentary work with the following exceptions:

> She can occasionally climb [] ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, [or] crawl []; can tolerate occasional exposure to unprotected heights, moving mechanical parts, and vibrating tools; and must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants.  The claimant has moderate limitations understanding, remembering, and carrying out complex decisions/instruction[s]; is able to understand, remember, and carry out simple routine repetitive tasks/decisions; and she can occasionally interact with the public, co-workers, and supervisors; and tolerate occasional changes in her routine and work setting.

(Op. at 9-10, ECF No. 7-2, PageID.52-53).

The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (*Id.* at 10-13, PageID.53-56).  Plaintiff could not perform any past relevant work.  (*Id.* at 13, PageID.56).

The ALJ considered the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education,

and work experience, the VE testified that there were approximately 125,000 jobs in the national economy that the hypothetical person would be capable of performing. (ECF No. 7-2, PageID.123-25; ECF No. 7-3, PageID.164-66).  The ALJ found that this constituted a significant number of jobs and found that plaintiff was not disabled. (Op. at 13-15, ECF No. 7-2, PageID.56-58).

## Discussion

### 1.

Plaintiff argues that the ALJ's refusal to subpoena, allow cross-examination or the proffer of interrogatories to Dr. Timothy Strang, a consultative examiner, was an abuse of discretion and denied her due process.  (Plf. Brief at 9-13, ECF No. 11, PageID.792-96; Reply Brief at 2-4, ECF No. 16, PageID.826-28).  Upon review, I find no basis for disturbing the Commissioner's decision.

Plaintiff attorney's prehearing brief included a request that plaintiff be sent for "a consultative psychological exam with IQ testing."  (ECF No. 7-7, PageID.380). On October 22, 2015, the ALJ conducted the initial administrative hearing.  (ECF No. 7-3, PageID.131-170).  At the outset, the ALJ and plaintiff's attorney discussed the request for a consultative examination.  The ALJ related that he was leaning in the direction of ordering, post-hearing, not only IQ testing, but a full consultative psychological evaluation.  (*Id.* at PageID.134-36).  The ALJ stated at the close of the hearing that he was going to refer plaintiff for a psychological consultative examination and that it would include IQ testing and a medical source statement. (*Id.* at PageID.168).

On December 1, 2015, Dr. Strang conducted an adult mental status evaluation and IQ/psychological examination. (ECF No. 7-11, PageID.673-77). He also completed an accompanying "Medical Source Statement of Ability to do Work-related Activities (Mental)." (*Id.* at PageID.678-80).

On January 7, 2016, the ALJ sent plaintiff's attorney a notice that he intended to enter the above-referenced evidence into the record. (ECF No. 7-7, PageID.412-13). The notice listed actions that plaintiff's attorney could take:

> You may submit any and all of the following: written comments concerning the evidence, a written statement as to the facts and law you believe apply to the evidence, and any additional records you wish me to consider (including a report from the treating physician). You may also submit written questions to be sent to the author(s) of the new evidence.
>
> You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, submit additional evidence and written or oral statements concerning the facts and law. If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision. In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I determine that questioning of the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.
>
> You may request that I issue a subpoena to require the attendance of a witness or the submission of records. You must submit a subpoena request, in writing, no later than 5 days before the date of any supplemental hearing. Any request that I issue a subpoena must provide the names of the witness[] . . . [and] a statement of the important facts that the witness . . . is expected to prove; and the reason why these facts cannot be proven without issuing a subpoena. I will issue a subpoena if reasonably necessary for the full presentation of the case.

(*Id.* at PageID.412).

On January 18, 2016, plaintiff's attorney made a request for a supplemental hearing and he asked the ALJ to "subpoena Timothy Strang PhD to testify." (ECF No. 7-7, PageID.415-16).  Plaintiff's attorney argued that the ALJ should issue a subpoena because the relatively mild functional restrictions suggested by Dr. Strang were inconsistent with his diagnosis.  In addition, the attorney wanted to question Dr. Strang regarding plaintiff's "ability to complete a normal work day and work week without interruptions" and "perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*).  Plaintiff's attorney offered no explanation why these facts could not be proven without issuing a subpoena.  Plaintiff's attorney did not avail himself of the opportunity to submit written questions to Dr. Strang. (*Id.*).

The ALJ granted plaintiff's request for a supplemental hearing.  It is evident from the supplemental hearing transcript that plaintiff's attorney had advance notice that the ALJ had denied his request for a subpoena compelling Dr. Strang's appearance. (ECF No. 7-2, PageID.108).  Plaintiff argues that under HALLEX-I-2-5-78 the ALJ was required to provide him "with a written notification of the denial of the request [for a subpoena] and enter both the request and the denial notification into [the] record as exhibits." (Plf. Brief at 9, ECF No. 11, PageID.792).

Omission of actions mentioned in HALLEX is not a basis for disturbing the Commissioner's decision.  "HALLEX" is the acronym for the Hearings, Appeals and Litigation Law Manual of the Social Security Administration.  *See Bowie v. Commissioner*, 539 F.3d 395, 397 (6th Cir. 2008).  "HALLEX is an internal guidance

tool.  It does not have the force of law." *Lasorda v. Commissioner,* No. 1:16-cv-435, 2017 WL 1276760, at *7 n.4 (W.D. Mich. Apr. 6, 2017).  " 'HALLEX does not impose judicially enforceable duties on either the ALJ or this [C]ourt.' "  *Morris v. Commissioner*, No. 1:11-cv-154, 2012 WL 4953118, at *12 (W.D. Mich. Oct. 17, 2012) (quoting *Lockwood v. Commissioner*, 616 F.3d 1068, 1072 (9th Cir. 2010)).  Further, plaintiff's argument that "the ALJ's failure to follow the HALLEX procedure denied her the opportunity to request that [] interrogatories be sent to Dr. Strang" (Reply Brief at 4, ECF No. 16, PageID.828) is untenable on this record.

During the supplemental hearing, plaintiff's attorney, on more than one occasion, indicated that he was not inclined to submit written interrogatories because answers to interrogatories are often not responsive and he wanted oral "give and take" that would allow him to ask follow-up questions.  (ECF No. 7-2, PageID.110, 113-14).  The ALJ stated at the end of the supplemental hearing that he would check into the most appropriate way to follow-up with Dr. Strang and that he would get in touch with plaintiff's attorney's office.  (*Id.* at PageID.127).  Plaintiff's attorney apparently did not receive a communication from the ALJ, but he did discover "on or about June 22, 2016, that the case status was 'Pending Decision Writing.' " (Plf. Brief at 11, ECF No. 11, PageID.794).

On June 22, 2016, plaintiff's attorney sent a letter to the ALJ.  Among other things, the attorney wrote:  "You suggested interrogatories to Dr. Strang, but I advised that I thought that meeting with a chance to actually cross examine Dr. Strang was by far preferable." (ECF No. 7-7, PageID.419).  Plaintiff's attorney did

not attach to his letter any proposed interrogatories that he wanted answered.  He
ended his letter "insist[ing] that [the ALJ] honor the proposal" in the January 7, 2016,
notice "allow[ing the attorney] to have a Supplemental Hearing at which [the ALJ
would] subpoena any witness necessary for a full presentation of the case." (*Id.* at
PageID.420).  The ALJ never left plaintiff's attorney without a method to address Dr.
Strang's findings.    Nothing during the course of administrative proceedings
prevented plaintiff's attorney from submitting written interrogatories.  The ALJ did
not enter his decision until July 28, 2016.

"An ALJ's decision regarding a claimant's request to issue a subpoena is
reviewed for abuse of discretion." *Luukkonen v. Commissioner*, 653 F. App'x 393, 403
(6th Cir. 2016); *see Calvin v. Chater*, 73 F.3d 87, 88 (6th Cir. 1996).  The ALJ gave a
lengthy and detailed explanation why, in the exercise of his discretion, he declined
plaintiff's request.  The ALJ found no evidence of factual error or inconsistency in Dr.
Strang's evaluation.  "Other than having the opportunity to cross-examine Dr. Strang
in person, the claimant raised no issues of error, fact or law that would call for further
error of explanation by Dr. Strang." (Op. at 2, ECF No. 7-2, PageID.45).  Further, if
counsel had been able to elicit testimony from Dr. Strang regarding plaintiff's ability
to work full time, such an opinion would not be entitled to weight because RFC is an
issue reserved to the Commissioner. (*Id.*).  The ALJ reasonably determined that the
record before him was sufficient to resolve plaintiff's claims for DIB and SSI benefits.
*See Longanecker v. Commissioner*, No. 1:16-cv-417, 2017 WL 217802, at *4 (W.D.
Mich. Jan. 19, 2017).  I find that the ALJ did not abuse his discretion in declining

plaintiff's request to subpoena Dr. Strang.

**2**.

Plaintiff's second claim of error is that the ALJ's finding regarding her RFC is not supported by substantial evidence. As noted in the previous section, RFC is an administrative finding of fact reserved to the Commissioner.[2] 20 C.F.R. §§ 404.1527(d), 416.927(d); *see Mokbel-Aljahami v. Commissioner*, No. 17-2044, __ F. App'x __, 2018 WL 2017564, at *5 (6th Cir. Apr. 30, 2018). While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence. *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012).

Plaintiff argues that the ALJ's opinion "exaggerated the Plaintiff's capabilities and disregarded evidence that was contrary to the conclusions he reached." (Plf. Brief at 15, ECF No. 11, PageID.798). The ALJ is not required to discuss every piece of evidence in the administrative record. *See Kornecky v. Commissioner*, 167 F. App'x 496, 508 (6th Cir. 2006). Arguments that the ALJ mischaracterized or "cherry picked" the administrative record are frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence. *See Ulman v. Commissioner*, 693 F.3d at 713; *see also Reynolds v.*

---

[2] All citations to regulations herein are to the versions in effect on July 28, 2016, the date of the ALJ's decision.

*Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772. The ALJ's decision provides an accurate summary of the administrative record.

A. Consideration of All Impairments

Plaintiff argues that the ALJ failed to properly consider all her impairments or the effects of her impairments, particularly her anger issues, sleep problems, and hallucinations. (Plf. Brief at 14, ECF No. 11, PageID.797). I find no basis for disturbing the Commissioner's decision.

The ALJ gave appropriate consideration to plaintiff's anger issues. (Op. at 8, ECF No. 7-2, PageID.51). Plaintiff reported that she had "occasional problems interacting with others. She testified about feeling angry and frustrated on some days." (*Id.*). The ALJ found that despite plaintiff's alleged limitations, the evidence showed that she could "interact independently, appropriately, effectively, and on a sustained basis, with other individuals." (*Id.*). Among other things, the ALJ noted that plaintiff was "able to live independently with her boyfriend and extended family that include[d] an infant grandchild." (*Id.*). Plaintiff's anxiety did not prevent her from going out in public and attending doctor's appointments and group therapy sessions. (*Id.*). She reported going out to parks and movies. She was able to provide

a grandson's transportation to and from school.  (*Id.* at 12, PageID.55).

The ALJ likewise gave appropriate consideration to plaintiff's difficulty sleeping.  Plaintiff testified that her sleep was broken by nightmares making her feel tired during the day.  "However, despite her alleged limitations, [plaintiff] was able to sustain focus and concentration long enough to permit the timely and appropriate completion of tasks that require attention such as using a computer, completing crochet projects, driving, and  managing her own finances." (Op. at 8, PageID.51).  In addition, plaintiff related that she read romance novels.  (*Id.* at 12-13, PageID.55-56).

Plaintiff's argument that the ALJ failed to give adequate consideration to her hallucinations fares no better.  Plaintiff testified that she heard muffled voices about five times a month.  (ECF No. 7-3, PageID.152).  Her attorney elicited additional testimony regarding the voices:

> Q    Regarding the voices, how much of a – when they occur, how much
> of a problem is it for you?  Are they distracting, can you override them?
> What's that like?
>
> A    Very distracting.  I can't override them at all.  It's very bad, that
> I lose my concentration very easily.

(*Id.* at PageID.158).

The ALJ addressed plaintiff's subjective complaints regarding hallucinations and difficulty concentrating.  (Op. at 6, 11-12, ECF No. 7-2, PageID.49, 54-55).  The ALJ observed that, although a counselor had offered a diagnosis of unspecified schizophrenia and other psychotic disorder,[3] that opinion was not well supported and

---

[3] The mere diagnosis of a condition says nothing about its severity or its impact on plaintiff's functional limitations.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Kennedy v. Astrue*, 247 F. App'x. 761, 767 (6th Cir. 2007).

it was not an opinion from an acceptable medical source.[4]  (*Id.* at 6) (citing ECF No. 7-12, PageID.720).

Plaintiff's assertion that Sajid Hussain, M.D., diagnosed her as having unspecified schizophrenia and other psychotic disorder (Plf. Brief at 14, ECF No. 11, PageID.797) (citing ECF No. 7-12, PageID.740, 746) cannot withstand scrutiny.

On January 19, 2016, Dr. Hussain conducted a medication review.  Plaintiff related that she was not experiencing any current audiovisual hallucinations.  She denied any other psychotic, manic and depressive symptoms.  Her speech was clear and coherent and there was no formal thought disorder.  She was alert and oriented.  Plaintiff gave a history indicating that in the past she heard voices "off and on."  Dr. Hussain noted that this was "more part of her PTSD than true hallucinations."  Dr. Hussain provided a diagnosis of major depressive disorder, recurrent type, PTSD, and chronic depression.   (ECF No. 7-12, PageID.739-40).   The references to unspecified schizophrenia and other psychotic disorder are a vestige of someone else's diagnosis.  (*Id.*).

On April 7, 2016, Dr. Hussain conducted another medication review.  Plaintiff "denie[d] auditory or visual hallucinations." (*Id.* at PageID.745).  Dr. Hussain stated that plaintiff carried a diagnosis of post-traumatic stress disorder and major depression with some psychotic features, but her psychotic features were "more like flashbacks and recollection of past trauma." (*Id.*).  He observed that "[s]omeone" in

---

[4] Counselors are not "acceptable medical sources."  *See* 20 C.F.R. §§ 404.1513 (a), (d), 416.913(a), (d).

the past had given a diagnosis of schizophrenia or psychotic disorder.  (*Id.*).  Dr. Hussain noted that plaintiff "never had a formal thought disorder since [he] started seeing her."  (*Id.*).  He made no changes in plaintiff's medications and instructed plaintiff to return in about three months.  (*Id.*).  Dr. Hussain's opinions do not undermine the ALJ's finding regarding plaintiff's RFC.

B.  Weight Given to Medical Source Findings

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ did not provide an explanation why his RFC finding "did not incorporate Dr. Strang's findings that [plaintiff] would have 'difficulty with problem solving and working memory.'"  (Plf. Brief at 15, ECF No. 11, PageID.798) (quoting ECF No. 7-11, PageID.677 and citing a discussion of the treating physician rule in *Wilson v. Commissioner*, 378 F.3d 541, 547 (6th Cir. 2004)).  This argument is meritless.  Dr. Strang was a consultative examiner.  The treating physician rule did not apply to his opinions.  In addition, Dr. Strang took the vague statement at the end of his examination report that plaintiff would have "difficulty with comprehension, problem solving and working memory" (ECF No. 7-11, PageID.678) and made an accompanying medical source statement providing his assessment of plaintiff's level of functional restriction.  (*Id.* at PageID.678-80).  The ALJ incorporated into his RFC finding Dr. Strang's suggested restrictions of moderate limitations in understanding, remembering, and carrying out complex decisions/instructions and no limitations in the ability to understand, remember, and carry out simple routine repetitive tasks/decisions.  (*Id.* at 678; Op. at 9, 12-13, ECF

-14-

No. 7-2, PageID.52, 55-56).

    C. Credibility

    Plaintiff invokes SSR 16-3p and argues that the ALJ committed error because he did not make a specific credibility finding. (Plf. Brief at 16-17, ECF No. 11, PageID.799-800). This argument does not provide a basis for disturbing the Commissioner's decision.

    SSR 16-3p applies to administrative decisions made on or after March 28, 2016. *See Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims* (reprinted at 2017 WL 5180304, at *1, 13 n.27 (SSA Oct. 25, 2017)). SSR 16-3p applies here because the ALJ entered his decision four months after March 28, 2016. In SSR 16-3p, the Administration "eliminate[ed] the term credibility from [its] sub-regulatory policy, as [its] regulations do not use the term. In so doing, [the Administration] clarif[ied] that subjective symptom evaluation is not an examination of the individual's character." *Id.* at 1; *see Dooley v. Commissioner*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Given the Administration's policy eliminating use of the word credibility, it is no surprise that the term credibility does not appear in the ALJ's opinion.[5]

    It is appropriate to note at the Administration's change in its sub-regulatory policy had no impact on the statutory deference to which an ALJ's factual findings are entitled. "The findings of the Commissioner of Social Security as to any fact, if

---

[5] The ALJ was not required to cite SSR 16-3p. *See Shepard v. Commissioner*, 705 F. App'x 435, 439 (6th Cir. 2017).

supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g); *see also*

*Morrison v. Commissioner*, No. 16-1360, 2017 WL 4278378, at *4 (6th Cir.

Jan. 30, 2017) ("[E]ven if this evidence could support the findings urged by [plaintiff],

we cannot overturn the ALJ's decision on that basis so long as there is substantial

evidence in the record to support that decision.").

Evaluation of a claimant's subjective complaints remains peculiarly within the

province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589,

592 (6th Cir. 1987); *see also Jones*, 336 F.3d at 476 ("[T]he ALJ has the opportunity,

which [the court] d[oes] not, of observing a witness's demeanor while testifying.");

*Buxton*, 246 F.3d at 773 ("The ALJ's findings . . . are entitled to deference, because

of the ALJ's unique opportunity to observe the claimant and judge her subjective

complaints.").   The statutory substantial evidence standard remains a "highly

deferential standard of review."  *Ulman*, 693 F.3d at 714.  Claimants challenging the

ALJ's findings in the evaluation of subjective symptoms continue to face an "uphill

battle."  *See Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).

The new policy ruling did not and could not change the underlying

regulations.[6]  The longstanding two-part analysis for evaluating symptoms applies.

---

[6] Social security rulings purport to interpret applicable regulations.  *See Ferguson v. Commissioner*, 628 F.3d 269, 272 (6th Cir. 2010).  Social security rulings "do not have the same force and effect as statutes and regulations[.]"  SSR 16-3p, 2017 WL 5180304, at *1; *see Shields v. Commissioner*, No. 17-6091, __ F. App'x __, 2018 WL 2193136, at*7 n.10 (6th Cir. May 14, 2018).  In the event of a conflict, statutes and regulations must control over social security rulings.  *See Paxton v. Secretary of Health & Human Servs.*, 856 F.2d 1352, 1357(6th Cir. 1988); *see also Kornecky*, 167 F. App'x at  498 n.2 ("As the agency's interpretation of its own regulations, [] a SSR 'is entitled to substantial deference and will be upheld unless plainly erroneous or

20 C.F.R. §§ 404.1529(a), 416.929(a).  "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.'  If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at \*4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)).  Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at \*3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at \*4 (E.D. Mich. Feb. 23, 2017).

SSR 16-3p requires that the ALJ's decision "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at \*10.  This does not result in any significant change because the Sixth

---

inconsistent with the regulation.'") (quoting *Wilson*, 378 F.3d at 549).  "Social Security Rulings are "binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner.  20 C.F.R. § 402.35(b)(1). While the Sixth Circuit has refrained from ruling on whether social security rulings are binding on the Commissioner in the same way as social security regulations, it has assumed they are.  *See Ferguson*, 628 F.3d at 272 n.1; *Wilson*, 378 F.3d at 549.

Circuit long ago found that SSR 16-3p's predecessor, SSR 96-7p,[7] required that the ALJ explain his credibility determination and that the explanation " 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the ALJ gave to the individual's statements and the reasons for that weight.' " *Rogers v. Commissioner*, 486 F.3d at 248 (quoting *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Assessing Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p* (reprinted at 1996 WL 374186, at *4 (SSA July 2, 1996)).

Plaintiff cites fragments of the record documenting changes in medication or instances where she reported side effects in support of an argument that her "efforts to address her [mental] illness and symptoms bolster her credibility." (Plf. Brief at 16-17, PageID.799-800). This approach is "tantamount to an invitation for this court to reweigh the evidence and determine that it supports a finding that the [p]laintiff was more credible." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *16 (N.D. Ohio June 4, 2018). The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d at 713.

SSR 16-3p states: "Persistent attempts to obtain relief of symptoms, such as

---

[7] "Although SSR 16-3p supersedes SSR 96-7p, according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Blocker v. Commissioner*, No. 2:17-cv-513, 2018 WL 3215507, at *9 (S.D. Ohio July 2, 2018) (citation and quotation omitted). "[T]he requirements of SSR 16-3p are nearly identical to those contained in SSR 96-7p with respect to the ALJ's analysis of a claimant's alleged symptoms[.]" *Lokey v. Commissioner*, No. 3:17-cv-1090, 2018 WL 2739371, at *7 (M.D. Tenn. June 7, 2018).

increasing dosages and changing medications . . . *may* be an indication that an individual's symptoms are a source of distress and *may* show that they are intense and persistent." 2017 WL 5180304 at *9 (emphasis added).  Here, the ALJ considered the changes in plaintiff's medications and found that they did not support the level of symptom intensity and persistence that she claimed.  (Op. at 11-13, ECF No. 7-2, PageID.54-56).

The ALJ gave a lengthy and detailed explanation of his factual findings regarding plaintiff's symptoms (*Id.* at 10-13, PageID.53-56) and his findings are supported by more than substantial evidence.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: August 15, 2018                    /s/  Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).